# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 3, 2016

## STATE OF TENNESSEE v. ANTHONY JACKSON

**Appeal from the Criminal Court for Shelby County**
No. 1205596      Lee V. Coffee, Judge

_____

**No. W2015-01403-CCA-R3-CD  -  Filed August 2, 2016**

_____

The defendant, Anthony Jackson, was indicted for attempted first degree premeditated murder, employing a firearm with intent to commit a felony, and convicted felon in possession of a firearm.  After trial, a jury found the defendant guilty of the lesser-included offense of attempted voluntary manslaughter, employing a firearm with intent to commit a felony, and convicted felon in possession of a firearm. The trial court subsequently held a sentencing hearing and imposed sentences of twelve years for attempted voluntary manslaughter, fifteen years for employing a firearm with intent to commit a felony, and fifteen years for convicted felon in possession of a firearm with all sentences to be served consecutively for an effective sentence of forty-two years.  On appeal, the defendant argues that there was insufficient evidence to support his convictions, and the trial court imposed an excessive sentence.  Following our review, we affirm the judgments of the trial court.

### Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Paul K. Guibao, Memphis, Tennessee (on appeal) and Mark Mesler, Memphis, Tennessee (at trial and at motion for new trial), for the appellant, Anthony Jackson.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Ann Schiller, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On the afternoon of June 5, 2012, the victim, Eronia Neal, was standing outside DJ's Grocery with a friend, known to the victim as "Black." According to the victim, the defendant, who the victim only knew by his nickname -- "Amp," approached them and the two began to argue with Black about a debt he allegedly owed the defendant. While the discussion was heated, it ended without incident. The victim testified that he was not a part of the argument between the defendant and Black and had no knowledge of the debt Black owed the defendant. While the victim was familiar with the defendant from around the neighborhood, he testified that he never had a problem with the defendant.

Later that evening, the victim was still outside of DJ's Grocery when the defendant approached him and started arguing with the victim about Black's debt. As it did earlier in that day, the discussion became heated. In response, the victim told the defendant "Whatever y'all got going on, I don't have nothing to do with it. Just, you ain't going to sit up here and talk crazy to me." After the victim made these statements, the defendant left the store front and walked to his car.

Within moments, the defendant returned to the store. As he approached, the victim heard one of the defendant's friends say, "You ain't got to do that." The defendant then approached the victim, produced a gun from under his shirt, and shot the victim in the leg. After the first shot, the victim fled into the store hoping to escape through the backdoor. However, the defendant pursued him announcing his intent to collect Black's debt from the victim and his intent to kill the victim. According to the victim, the defendant fired at least two more shots once they were inside the store. Finally, at the urging of his friends, the defendant fled the location.

Memphis Police Officer Dominique McCraven testified that she was involved in the investigation of the shooting at DJ's Grocery. Officer McCraven was dispatched to the hospital to interview the victim. During the interview, the victim told Officer McCraven that the defendant shot him in the leg after asking him about Black. Then, as the victim fled into the store, the defendant pursued him firing at least two more shots.

Officer Milton Gonzalez with the Memphis Police Department's Project Safe Neighborhoods Unit testified that he was tasked with trying to identify and locate the defendant. According to Officer Gonzalez, the victim had described the defendant as an "older male black between forty and fifty, street name of Amp." From another source, Officer Gonzalez also learned that the perpetrator's last name was Jackson. Though he was unable to find anyone with the street name Amp in the police database, Officer

Gonzalez did determine that the defendant, who was in the database as Anthony Jackson, matched the description provided by the victim.

Officer Gonzalez provided the defendant's name to Officer Jonathon Clapp who, in turn, prepared a photospread containing the defendant's picture and five other similar looking individuals. When Officer Clapp showed the photospread to the victim, he identified the defendant stating, "This is Amp, who shot me in the leg."

In addition to the live testimony, the State also introduced a video recording of the incident that was captured by the stores security camera.

At the conclusion of Officer Clapp's testimony, the State rested. After moving for acquittal, which the trial court denied, the defendant rested without presenting proof. The jury subsequently found the defendant guilty of the lesser-included offense of attempted voluntary manslaughter, employing a firearm with the intent to commit a felony, and being a felon in possession of a firearm.

At a subsequent sentencing hearing, the presentence report and certified copies of the defendant's nine prior felony and two prior misdemeanor convictions were entered into evidence. After reviewing the evidence presented at trial and during the sentencing hearing and the arguments of the parties, the trial court sentenced the defendant to twelve years for attempted voluntary manslaughter, fifteen years for employing a firearm during the commission of a felony, and fifteen years for felon in possession of a firearm as a Career Offender. The trial court also found the defendant to be an offender with an extensive criminal history and a dangerous offender. Therefore, the trial court ordered the defendant's sentences to be served consecutively for an effective sentence of forty-two years to be served with the Tennessee Department of Correction.

This appeal followed. On appeal, the defendant argues the evidence was insufficient to justify a rational trier of fact finding guilt beyond a reasonable doubt. The defendant further argues the trial court imposed an excessive sentence. The State responds that the evidence was sufficient to sustain the defendant's convictions, and the trial court properly sentenced the defendant. We agree with the State and affirm the judgment of the trial court.

**Analysis**

*Sufficiency of the Evidence*

The defendant challenges the sufficiency of the convicting evidence, arguing that the testimony of the victim was inconsistent. The State responds that it is the purview of

the jury, not the appellate court, to weigh and decide issues of credibility.  And, therefore, by finding the defendant guilty of attempted voluntary manslaughter, the jury resolved those issues in favor of the State.  We agree with the State.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190–92 (Tenn. 1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas,* 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule: { "pageset": "S53

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Voluntary manslaughter is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39–13–211(a). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense":

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

*Id.* 39-12-101(a). The jury is responsible for reviewing the evidence to determine whether it supports a finding of adequate provocation. *State v. Williams,* 38 S.W.3d 532, 539 (Tenn. 2001).

In the light most favorable to the State, the evidence shows that on the afternoon of June 5, 2012, the defendant had words with the victim's friend, Black, over a debt Black allegedly owed the defendant. Though he was present when the argument took place, the victim was not involved in the argument and was unaware of the debt which was the subject of the argument. While that heated discussion ended without incident, the defendant returned to the scene later that evening and confronted the victim about Black's debt. The victim testified that the discussion became heated, but he considered it over when the victim walked away. However, both the testimony of the victim and the video from the store's security camera reveal that the defendant returned moments later and shot the unarmed victim in the leg. When the victim attempted to escape into the store, the defendant pursued him firing two more shots at the victim. Additionally, the victim testified that, as the defendant was shooting, he stated that he was going to make the victim pay Black's debt and threatened to kill the victim.

The jury, by finding the defendant guilty of voluntary manslaughter, accepted this evidence and disregarded the defendant's attempt to characterize the victim as not credible. Concerning the defendant's claim that the testimony of the victim was too inconsistent for a rational trier of fact to have reconciled the testimony, we note that though there were some inconsistencies in the victim's testimony concerning how long he has known the defendant and how well he knows the defendant, the victim's testimony was not as inconsistent as the defendant suggests and, furthermore, the video evidence from the store's security camera corroborates the victim's testimony. Additionally, any inconsistency in the witness's testimony was resolved by the jury as the trier of fact, as was its province. Accordingly, the defendant is not entitled to any relief as to this issue.

*Sentencing*

The defendant also complains that the trial court erred in imposing consecutive sentences. More specifically, the defendant argues that the trial court erroneously found him to be a dangerous offender and that after doing so also failed to make the appropriate findings that the extended sentence was necessary to protect the public against further criminal conduct by the defendant and that the sentence reasonably related to the severity of the offenses committed. The State responds that the trial court acted well within its discretion in ordering consecutive sentences. After a thorough review of the record, we agree with the State and affirm the sentence imposed by the trial court.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise,* 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer,* 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore,* 6 S.W.3d 235, 242 (Tenn. 1999)). "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing determination." *Id.* at 709. Moreover, under those circumstances, this court may not disturb the sentence even if it had preferred a different result. *See State v. Carter,* 254 S.W.3d 335, 346 (Tenn. 2008).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and −114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40–35–210; *State v. Taylor,* 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2010).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2010); *Bise,* 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the

presumption [of reasonableness].” *Bise,* 380 S.W.3d at 705–06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401(e) (2010), Sentencing Comm’n Cmts.

The Tennessee Supreme Court has expanded the standard of review in *Bise* to trial courts’ decisions regarding consecutive sentencing. *State v. Pollard,* 432 S.W.3d 851, 859 (Tenn. 2013). “So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal.” *Id.* at 862 (citing Tenn. R. Crim. P. 32(c)(1); *Bise,* 380 S.W.3d at 705). However, when the trial court “fails to provide adequate reasons on the record for imposing consecutive sentences, the appellate court should neither presume that the consecutive sentences are reasonable nor defer to the trial court’s exercise of its discretionary authority.” *Pollard,* 432 S.W.3d at 863–64. In such situations, this court may “(1) conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences; or (2) remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences.” *Id.* at 864 (citing *Bise,* 380 S.W.3d at 705 & n.41).

Tennessee Code Annotated section 40-35-115 sets forth seven different situations in which a trial court may impose consecutive sentencing, including when “[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]” Tenn. Code Ann. § 40-35-115(b)(4); *see Wilkerson,* 905 S.W.2d at 936. Before a trial court may impose consecutive sentences on the basis that a defendant is a dangerous offender, the trial court must also find “that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.” *Wilkerson,* 905 S.W.2d at 939. In order to limit the use of the “dangerous offender” category to cases where it is warranted, our supreme court has stated that the trial court must make specific findings about “particular facts” which show that the *Wilkerson* factors apply to the defendant. *State v. Lane,* 3 S.W.3d 456, 461 (Tenn. 1999).

In support of its determination that the defendant is a dangerous offender, the trial court first noted that the defendant fired several shots inside a public place where people other than the victim were present – the victim’s friends, the defendant’s friends, the store’s clerk, and a female patron of the store. Additionally, the trial court found that the circumstances surrounding the commission of the offense are aggravated and, therefore, the aggregate length of the sentence reasonably relates to the severity of the offenses. Finally, relying on the defendant’s extensive criminal history, the trial court also determined that consecutive terms were necessary to “protect the community from further

acts of violence" from the defendant. As found by the trial court, the defendant's criminal history consists of prior convictions in 1985 for assault with intent to commit murder, robbery with a deadly weapon, and assault with intent to commit robbery; a 1997 misdemeanor conviction for drug possession; 2003 convictions for two counts of aggravated robbery, three counts of kidnapping, and one misdemeanor conviction for drug possession; and a 2008 conviction for attempted aggravated robbery.

Our review of the record reveals that the trial court did, in fact, properly articulate its basis for imposing consecutive sentences and did not abuse its discretion in doing so. Thus, the defendant is not entitled to relief on this claim.

Finally, while not challenged by the defendant on appeal, we note that the trial court also correctly found that the defendant's record of criminal activity is extensive. This factor alone supports consecutive sentencing. "This factor has been interpreted to include not only the convictions presently before the sentencing court but also prior offenses." *State v. Palmer,* 10 S.W.3d 638, 647-49 (Tenn. Crim. App. 1999). As noted above, the defendant's prior record consists of conviction for nine violent felonies and two misdemeanors and spans his adult life. In the present case, the defendant was convicted of three additional felony offenses. Therefore, he had a total of twelve felony offenses all of which are violent in nature, and he is an offender with an extensive criminal history. *See State v. Cummings,* 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992)(Consecutive sentencing upheld where a defendant with no criminal history was convicted of eight offenses in a single trial based on a finding that his record of criminal activity was extensive).

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE